IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NAOMI WILLIAMS,                    :

      Plaintiff,                   :

vs.                                :        CA 08-0506-WS-C

LE CREWE DE SPANIARDS,      :
et al.,
                          :
      Defendants.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the complaint (Doc. 1), the motion to dismiss filed by defendant Le Crewe de Spaniards (Doc. 9; *see also* Doc. 10) and plaintiff's response in opposition (Doc. 34). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **GRANT IN PART** and **DENY IN PART** the motion to dismiss.

## FINDINGS OF FACT

1.      Plaintiff filed suit in this Court on August 28, 2008 against Le Crewe de Spaniards, the Veterans of Foreign Wars, Gaston-Lee Post 5660, and

numerous fictitious parties, alleging violations of Title II of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, as well as asserting a state-law outrage claim against the defendants. (*See* Doc. 1)

      6.     VFW is a place of public accommodation within the meaning of 42 U.S.C. § 2000a(b)(2) and (b)(3).

      7.     The operation of Le Crewe affects commerce within the meaning of 42 U.S.C. § 2000a(c)(2) and (c)(3).

      8.     The operation of VFW affects commerce within the meaning of 42 U.S.C. § 2000a(c)(2) and (c)(3).

**Title II Violations**

      9.     Defendant, Le Crewe, through its actions, or the actions of its employees or agents, have implemented a policy and practice of denying to non-white individuals, on account of these individuals' race, color and/or national origin, including but not limited to African-Americans, the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages, and accommodations, on the same basis as they make them available to white persons.

      10.     Defendant, VFW, through its own actions, or the actions of its employees or agents, have implemented a policy and practice of denying to non-white individuals, on account of these individuals' race, color and/or national origin, the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages, and accommodations, on the same basis as they make them available to white persons.

      11.     The conduct of Defendants described in Paragraphs 11 and 12 constitute a pattern or practice of

resistance to the full and equal enjoyment by non-white individuals, on account of these individuals' race, color and/or national origin, of rights secured by 42 U.S.C. § 2000a, *et seq.*, and the pattern or practice is of such a nature and is intended to deny the full exercise of such rights. Unless restrained by Order of this Court, Defendant[s]  will continue to refuse to provide these non-white individuals with the full and equal enjoyment of rights secured to them by 42 U.S.C. § 2000a, *et seq.*

12.     On or about May 31, 2008, Le Crew[e] held an event at the VFW open to the public to which Le Crew[e] sold tickets. Upon entering the VFW, the Plaintiff, in the presence of two fellow coworkers, was told by Defendants John Doe 1 and/or John Doe 2, "No Blacks Allowed" and refused admission. Plaintiff was shocked, embarrassed, hurt and humiliated as were the two friends she was with, all in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.*

13.     Plaintiff was told by Defendants John Doe 1 and/or John Doe 2, "This is nothing against you; it is just your color. We don't accept black people at our parties. We would not go to the Knights of Columbus and they would not come here. That is the way it is. I am sorry. It is not about you. It is just your color."[1] [This constitutes a] violation of Title II of the

---

[1]     Plaintiff attached to her complaint the statements of the two friends she was with on May 31, 2008, Pam Kenopke and Cheryl Owen. (Doc. 1, Exhibits A & B) Owen's statement reads, as follows:

On May 31, 2008, Naomi Williams, Pam Kenopke, and I were invited by Mrs. Robert Bullock and Claudia Jane Bullock to attend a Greek Night Dinner in Fairhope. The cost was $10.00. The proceeds were to help Claudia's daughter-in-law's group with their club expenditures for the year. The three of us arrived around 7:20 P.M. at the Fairhope V.F.W. Club. When we arrived, we learned that the party was in the back of the VFW in the private dining area. We talked with several people as we walked around the building on the way to our destination; everyone seemed to be in high spirits and jovial. I was the first in line of my group and waved to Claudia Jane to let her know that we had arrived. As we stood

Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.*

## 42 U.S.C. §1981 VIOLATIONS

.        .        .

15.    42 U.S.C. § 1981 provides "All persons . . . shall have the same right in every State . . . to make and enforce contracts . . . and to the full and equal benefit of all laws . . . as is enjoyed by white citizens . . . ."

16.    Defendants denied Plaintiff the right to enter a contract to attend an event open to the public based on the fact that she is not a "white citizen".

17.    Defendants' conduct caused actual damage to the Plaintiff and Plaintiff demands actual damages, compensatory damages and punitive damages in an amount to be determined by a jury.

(*Id.* at ¶¶ 9-13 & 15-17(internal citation omitted))

2.    Defendant Le Crewe de Spaniards filed its motion to dismiss the

first two counts of the complaint on September 29, 2008. (Doc. 9; *see also*

--------

waiting to get in the door, a man approached and asked if Naomi was with us. We said yes, but that she was twenty-one. (At first, we thought he may be questioning her age because she looks so young.) Then, he leaned closer to us with outstretched hands and said to Naomi: "This is nothing against you; it is just your color. We don't accept black people at our parties. We would not go to the Knights of Columbus and they would not come here. That is the way it is. I am sorry. It is not about you. It is just your color." I felt sick to my stomach. Any other time I would have used strong words, but when I saw the look on Naomi's face, I just wanted to shield her from all the pain in the world. I said, "If Naomi can't go in, then we won't." Pam, Naomi, and I walked away at that time.

(Doc. 1, Exhibit B)

Doc. 10) The moving defendant seeks to dismiss the first count, alleging a violation of Title II of the Civil Rights Act of 1964, on the basis that it is not a place of public accommodation (Doc. 9, at 2-3; Doc. 10, at 2-8) and the second count, alleging a violation of 42 U.S.C. § 1981, on the basis of a failure to establish the denial of a right to make or enforce a contract (*see* Doc. 9, at 3; Doc. 10, at 9-11).

3.     Plaintiff filed her response in opposition on December 16, 2008. (Doc. 34)

Paragraph 7 of the Complaint alleges the operation of Le Crewe affects commerce within the meaning of 42 U.S.C. § 2000a(c)(2) and (c)(3).

Paragraph 11 of the Complaint alleges the conduct of Defendants described in Paragraphs 11 and 12 constitute a pattern or practice of resistance to the full and equal enjoyment by non-white individuals, on account of these individuals' race, color and/or national origin, of rights secured by 42 U.S.C. § 2000a, *et seq.*, and the pattern or practice is of such a nature and is intended to deny the full exercise of such rights. Unless restrained by Order of this Court, Defendant will continue to refuse to provide these non-white individuals with the full and equal enjoyment of rights secured to them by 42 U.S.C. § 2000a, *et seq*.

Paragraph 12 of the Complaint alleges on or about May 31, 2008, Le Crew[e] held an event at the VFW open to the public to which Le Crew[e] sold tickets. Upon entering the VFW, the Plaintiff, in the presence of two fellow coworkers, was told by Defendants John Doe 1 and/or John Doe 2, "No Blacks Allowed" and refused admission. [] Plaintiff was

5

shocked, embarrassed, hurt and humiliated as were the two friends who were with her, all in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq*.

Paragraph 13 of the Complaint alleges Plaintiff was told by Defendants John Doe 1 and/or John Doe 2, "This is nothing against you; it is just your <u>color</u>. <u>We don't accept black people</u> at our parties. [] We would not go to the Knights of Columbus and they would not come here. That is the way it is. I am sorry. It is not about you. It is just your color[]", in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq*.

Paragraph 16 of the Complaint alleges Defendants denied Plaintiff the right to enter a contract to attend an event open to the public based on the fact that she is not a "white citizen".

Ex[hibit] B states that Plaintiff was invited by a member and a non member of Le Crewe to buy a ticket to the Greek Night Party sponsored by Le Crewe and that Plaintiff was denied admission based on her race.

.          .          .

This case is not about a person seeking to become a member of the Le Crewe or about a person seeking to participate in Le Crewe's truly private meetings and events not open to the public. The Plaintiff is entitled to discovery and the opportunity to marshal evidence that a place of public accommodation does not require fee simple title to a property or even a specific address. This case is not about the integration of Mardi Gras Societies or an assault on the mores of the community.

A bridge society or a chess organization may regularly rent space at different venues which it then controls. A Mardi Gras Society that doesn't own it[s] own property may rent property regularly to hold its meetings, to store its floats and to have parties and other functions. In the instant case, it appears the Defendant controlled the space it rented or at worse,

6

conspired with the lessor to violate the Civil Rights Act of 1964, 42 U.S.C. § 2000a (1988).

The complaint states that the Le Crewe sold tickets to the public. The ticket sales were not restricted to the members of Le Crewe but rather were sold to the general public without regard to their membership in the Le Crewe. In other words, anyone who was willing to pay the $10.00 price of the ticket was "invited" to purchase a ticket and then to attend the event. The transaction of selling the ticket by Le Crewe and purchasing the ticket by the Plaintiff is a contract; the offer to sell and the promise to buy the ticket is similarly a contract.

Le Crewe rented the facilities of the VFW and as such were the proprietors of the leased space and [,] for the period of time of the lease[,] Le Crewe maintained a place of public accommodation. Le Crewe is not merely a private group which limits its activities to private events held in non-public or non-governmental property. In fact, the annual ball of the Le Crewe is held in a government owned facility, maintained and paid for by the taxpayers. The cost of the facility is significantly reduced from what a non-public facility would charge and thus Le Crewe receives government benefits. Le Crewe's annual parade is an event which uses public streets of municipalities and the State of Alabama; police department members and firefighters and State Troopers are paid salary and overtime to facilitate the parade activity and the Public Works Department is required to clean up after the parade. All of these activities implicate interstate commerce.

Defendant noted that Clegg at 755 stated "<u>Organizations fall under the purview of Title II when entry into a facility open to the public is dependent on membership in the organization governing the facility</u> . . .[] To conclude, however, that Title II covers organizations having no affiliation with any public facility would be tantamount to finding that an organization is a 'place'. Such an interpretation would be at odds with the express language of the statute." Plaintiff contends that her

7

complaint need not give every detail of its claims but rather must only put the Defendants on notice of its contentions. Plaintiff's discovery will make clear the facts set forth in the allegations of the Complaint.

The Defendants claim the Plaintiff's 42 USC 1981 [claim] does not set forth the "contractual right she was denied the benefit of" []. As stated above, the purchase of a ticket constitutes a contract as does the offer to sell a ticket. The Defendants go further, citing a District court case from Louisiana, Perkins v. New Orleans Athletic Club, 429 F.Supp. 661 (E.D. La. 1976) where Perkins was seeking membership.

The Plaintiff has made it clear that she is a Black woman who was denied the right to fulfill her contract to attend the party. Plaintiff[,] in the instant case, unlike the plaintiffs in Welsh v. Boy Scouts of America[,] 993 F.2d 1267 (7th Cir. 1993)[,] [] Clegg v. Cult Awareness Network[,] 18 F.3d 752 (9th Cir. 1994)[,] and Perkins v. New Orleans Athletic Club[,] 429 F.Supp. 661 (E.D. La. 1976), does not seek membership in the organization.

(*Id.* at 1-2 & 4-6)

## CONCLUSIONS OF LAW

1.      Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading which states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Id*. In light of the rule of notice pleading, a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations but it must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause

of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,___, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007); *see also id.* at ___ n.3, 127 S.Ct. at 1965 n.3 ("While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant 'set out *in detail* the facts upon which he bases his claim,' . . . Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[2][.]" *Id.* at ___, 127 S.Ct. at 1965 (internal citations omitted; footnote added).

2.      Title II of the Civil Rights Act of 1964 provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of **any place of public accommodation**, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42

---

[2]      "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at ___, 127 S.Ct. at 1965.

U.S.C. § 2000a(a) (emphasis supplied). Section 2000a(b) recognizes the following establishments which serve the public as places of public accommodation:

> **(1)** any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

> **(2)** any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

> **(3)** any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

> **(4)** any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishments.

*Id*. The provisions of this section do not apply to private clubs or other establishments not open to the public "except to the extent that the facilities of such establishment are made available to the customers or patrons of an establishment within the scope of subsection (b) of this section." 42 U.S.C. § 2000a(e).

10

3.      In *Denny v. Elizabeth Arden Salons, Inc*., 456 F.3d 427, 431 (2006), the Fourth Circuit recently held that §2000a, in setting forth a list of establishments which are places of public accommodation necessarily excluded "from its coverage those categories of establishments not listed."*See also Foster v. Howard University Hosp*., 2006 WL 2938701, *2 (D. D.C. 2006) ("The statute 'sets forth a comprehensive list of establishments that qualify as a place of public accommodation and in so doing excludes from its coverage those categories of establishments not listed.'").

4.      In her complaint filed in this Court, plaintiff does not allege that defendant Le Crewe de Spaniards is a place of public accommodation. (*See* Doc. 1, at ¶ 6 (alleging only that the VFW is a place of public accommodation)) Therefore, she cannot maintain a cause of action against this defendant for a violation of Title II of the Civil Rights Act of 1964. *See Denny, supra*. In other words, a private Mardi Gras association, like the Le Crewe de Spaniards, is not covered by Title II.

> Congress[,] when enacting § 2000a(b)[,] never intended to include membership organizations that do not maintain a close connection to a structural facility within the meaning of "place of public accommodation." . . . While the statute repeatedly refers to physical facilities it fails to refer to, much less delineate, anything resembling a membership organization or an association.

11

*Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1269 (7th Cir.), *cert. denied*, 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993); *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994) ("Nowhere does the statute refer to membership organizations, or otherwise indicate congressional intent to regulate anything other than public facilities. From the plain language of the statute, it is clear Congress' intent in enacting Title II was to provide a remedy only for discrimination occurring in facilities or establishments serving the public: to conclude otherwise would obfuscate the term "place" and render nugatory the examples Congress provides to illuminate the meaning of that term. . . . To conclude[] that Title II covers organizations having no affiliation with any public facility would be tantamount to finding that an organization is a 'place.' Such an interpretation would be at odds with the express language of the statute."). Because plaintiff fails to allege in her complaint that the Le Crewe de Spaniards is a place of public accommodation, her Title II claim asserted against the moving defendant need fail. *See Clegg, supra*, 18 F.3d at 756 ("Consistent with the language of the statute, we hold that Title II covers only places, lodgings, facilities and establishments open to the public, and applies to organizations only when they are affiliated with a place open to the public and membership in the organization is a necessary predicate to use of

the facility. When the organization is unconnected to entry into a public place or facility, the plain language of Title II makes the statute inapplicable."). The idea that because Le Crewe rented space at the VFW Post Number 5660 it somehow maintained a place of public accommodation for the period of its lease, since it sold tickets to the public, cannot stand in the face of clear rulings by numerous courts that establishments not listed in the statute are not places of public accommodation.

5.      Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts,[3] to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." *Id.* (footnote added). To ultimately prove a § 1981 claim, a plaintiff must "establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny, supra,* 456 F.3d at 434 (citations omitted); *see also Hill v. Kookies,*

---

[3]      "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

*Inc.*, 1999 WL 608713, * 3 (N.D. Ill. 1999) ("To establish a claim under §
1981, the plaintiffs must show that (1) they are members of a racial minority;
(2) the defendant had an intent to discriminate on the basis of race; and (3) the
discrimination concerned one or more of the activities enumerated in the
statute (i.e., the making and enforcing of a contract)."); *Shen v. A & P Food
Stores*, 1995 WL 728416, *2 (E.D. N.Y. 1995) ("To state a claim under §
1981[], plaintiffs must allege facts in support of the following three elements:
(1) they are members of a racial minority; (2) an intent to discriminate on the
basis of their race by defendant; and (3) the discrimination concerned one or
more activities enumerated in §[] 1981[.]").

6.     The moving defendant contends that plaintiff has failed to allege
facts which support a violation of § 1981 as follows: (1) there is no allegation
that she is a non-white individual; (2) she has failed to factually allege the
terms, conditions or existence of any contract which she was denied the right
to make; and (3) she has failed to allege facts establishing that Le Crewe de
Spaniards is governed by § 1981.

7.     The undersigned disagrees with the arguments made by the
moving party. First, while the plaintiff nowhere in the complaint explicitly
states she is a non-white individual, it is clear from numerous allegations in the

14

complaint that Ms. Williams is an African-American. (Doc. 1, at ¶¶ 12 & 13 (plaintiff refused admission on the basis of her color, being told that black people were not accepted at Le Crewe parties)) Moreover, it is clear that the moving party sold tickets to the event in question, held on May 31, 2008, and even though plaintiff does not explicitly state that she purchased such a ticket that is implicit in her allegation that she was refused admission. (*See id.*) Finally, with respect to the moving party's contention that plaintiff has not set forth facts establishing that it is governed by § 1981, reliance appears to be on *Perkins v. New Orleans Athletic Club*, 429 F.Supp. 661 (E.D. La. 1976).

> Although Section 1981 reaches some private contracts, it does not reach all associational relationships. Somewhere between the open-ended invitations of a private commercial school (which 1981 does reach) and a small class "operated on the basis of personal invitations extended to a limited number of preidentified students," the line must be drawn that limits the reach of section 1981.

>                   .        .        .

> The NOAC operates on a different basis than the Bobbie's Private School or Fairfax-Brewster School, which were considered in Runyon. As stated in the prior opinion, the NOAC

> > "does not advertise membership to the public; it is non-profit and it is run by the senior members; it does not fulfill a vital community role; no contention is made that it receives government support; it exacts substantial dues without regard to the extent of the use of its facilities; except for

> the public affairs it sponsors and the use of its
> meeting room, it generally denies use of its
> facilities to any but members and their guests; its
> membership is of moderate size; it is not
> connected with a larger establishment that is a
> public accommodation; its organizers had the
> intention of constituting a private club; its
> structure has not been altered since passage of the
> Civil Rights Act of 1964; it maintains
> membership admission procedures; and its
> members do have a nexus of common interest."

> On these facts, Runyon and the privacy consideration set forth
> at length in the prior opinion would require the conclusion that
> Section 1981 does not compel the NOAC to admit Mr. Perkins
> to membership.

*Id.* at 665. The idea that plaintiff has to allege facts which establish that § 1981 reaches this defendant stands in contrast to the claim requirements the undersigned has previously identified. *See Denny, supra*; *Hill, supra*; *Shen, supra*. Plaintiff has sufficiently alleged that she is a member of a racial minority, the defendant had an intent to discriminate on the basis of race, and that the discrimination concerned one or more activities enumerated in § 1981. This is all that is required of a plaintiff to state a cause of action under § 1981. *See, e.g., Hill, supra*. That the Eastern District of Louisiana's thirty-two-year-old opinion in *Perkins, supra*, may come into play at a later stage in this case is not for the undersigned to now anticipate. Therefore, the motion to dismiss this claim should be **DENIED**.

16

## <u>CONCLUSION</u>

In light of the foregoing, it is recommended that the motion to dismiss filed by Le Crewe de Spaniards (Doc. 9) be **GRANTED IN PART** and **DENIED IN PART.** The motion to dismiss plaintiff's Title II claim against the moving party should be **GRANTED** but the motion to dismiss plaintiff's § 1981 claim should be **DENIED**.

**DONE** and **ORDERED** this the 6th day of January, 2009.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

17

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.


  s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE